UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| BETH GOURLEY,<br><br>Claimant,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:21-CV-99 |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with the consent of the parties and by order of reference [Doc. 20] for disposition and entry of a final judgment. Claimant's Disability Insurance Benefits ("DIB") application under the Social Security Act, Title II, and supplemental security income application under the Social Security Act, Title XVI, were denied following a hearing before an Administrative Law Judge ("ALJ"). This action is for judicial review of the Commissioner's final decision per 42 U.S.C. § 405(g). Each party filed a dispositive motion [Docs. 17, 21]. For reasons set forth below, the Commissioner's Motion [Doc. 21] is **GRANTED**, Claimant's Motion [Doc. 17] is **DENIED**, and the final decision of the agency is affirmed.

## I. APPLICABLE LAW – STANDARD OF REVIEW

A review of the Commissioner's findings is narrow. The Court is limited to determining (1) whether substantial evidence supported the factual findings of the Administrative Law Judge ("ALJ") and (2) whether the Commissioner conformed to the relevant legal standards. 42 U.S.C. § 405(g); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 721 (S.D. Ohio 2019). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 841 (6th Cir. 1986). The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). At the same time, the Court may consider any evidence in the record, regardless of whether it was cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001); *see also Kushner v. Comm'r of Soc. Sec.*, 354 F. Supp. 3d 797, 802 (E.D. Mich. 2019). A decision supported by substantial evidence must stand, even if the evidence could also support a different decision. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing *Blakely*, 581 F.3d at 405); *see also Richardson v. Saul*, 511 F. Supp. 3d 791, 797 (E.D. Ky. 2021). On the other hand, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007); *see also Ackles v. Comm'r of Soc. Sec.*, 470 F. Supp. 3d 744, 752 (N.D. Ohio 2020).

A claimant must suffer from a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a). A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. The ALJ's review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A full review addresses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity ("RFC")], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC—do significant numbers of other jobs exist in the national economy which the claimant can perform?

*See* 20 C.F.R. § 404.1520. A claimant has the burden to establish benefits entitlement by proving the existence of a disability. *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *see also Bowermaster v. Comm'r of Soc. Sec.*, 395 F. Supp. 3d 955, 959 (S.D. Ohio 2019). It is the Commissioner's burden to establish a claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *see also Jones v. Berryhill*, 392 F. Supp. 3d 831, 855 (M.D. Tenn. 2019).

## II. PROCEDURAL AND FACTUAL OVERVIEW

Claimant filed for Social Security disability benefits and supplemental security income on September 20, 2019, alleging a disability onset date of June 30, 2018. (Tr. 29). The Claim was denied initially and on reconsideration. (Tr. 100, 106). Thereafter, Claimant requested a hearing, and a telephonic hearing was conducted by Administrative Law Judge ("ALJ") Gary J. Suttles on April 14, 2020. (Tr. 21). Following the hearing, the ALJ issued a decision on September 18, 2020, finding that Claimant was not disabled. (Tr. 40). In his decision, the ALJ made the following findings:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2023;

2. Claimant has not engaged in substantial gainful activity since June 30, 2018, the alleged onset date;

3. The Claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), depression, and bipolar disorder;

4. The Claimant does not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1;

5. After careful consideration of the entire record, the ALJ found that claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), she can lift and carry twenty pounds occasionally and ten pounds frequently; can sit, stand, or walk six of eight hours in a full eight-hour work day; can occasionally climb stairs but no ladders, ropes or scaffolds or running; can occasionally bend, stoop, crouch, crawl, balance, twist and squat; requires only occasional exposure to dust, fumes, gases, chemicals, and excessive heat and humidity; and can understand detailed instructions, concentrate and perform detailed tasks and respond and adapt to workplace changes and supervision;

6. The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity;

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2018, through the date of this decision;

*See* (Tr. 31-40). Claimant subsequently requested Appeals Council review, and the Appeals Council denied review. (Tr. 1). As a result, the ALJ's decision (hereafter "the decision") became the final decision of the Commissioner of Social Security. *Id.*

On appeal, Claimant argues the ALJ's residual functional capacity ("RFC") finding was not based on substantial evidence in the record. This argument is bifurcated into two subsections, and the Court will address each in turn.

First, Claimant argues the ALJ's RFC finding is not supported by substantial evidence. [Doc. 17, p. 10]. In developing this argument, Claimant asserts that the ALJ erred in rejecting all medical opinions as unpersuasive. *Id.* at 11. Claimant states that the ALJ's RFC determination is supported only by his own interpretation of the medical records instead of by substantial evidence. *Id.* Specifically, Claimant takes issue with the ALJ's consideration of Claimant's smoking history, medication management, worsening symptoms, and limitations as she described them during the hearing. First, the Claimant points out that the ALJ incorrectly observed that Claimant was continuing to smoke against medical advice. *Id.* at 12. Claimant notes that she worked diligently to significantly decrease her cigarette use and then stopped smoking altogether on March 17, 2020. *Id.* at 12-13.

Claimant next contends that the ALJ failed to explain why Claimant's medication management did not support a finding of disabling limitations. *Id.* at 13. On that point, the ALJ found that Claimant suffered from COPD, but found that her statements concerning intensity, persistence, and limiting effects were inconsistent with the record. *Id.* at 14. In response, Claimant explains that her diagnosis with stage 2 COPD indicates that her symptoms are worsening over time and will continue to do so. *Id.* Additionally, Claimant points to multiple physical examinations by her treating physician that documented wheezes and rhonchi and to her own testimony of symptoms consistent with stage 2 COPD. *Id.* at 14-15. In sum, Claimant submits that the ALJ's characterizations of her exertional limitations were not supported by the substantial weight of evidence in the record. *Id*. at 20.

In a second, related argument, Claimant asserts that the ALJ erred in failing to consider the entirety of the Vocational Expert's ("VE") testimony, specifically regarding excessive absenteeism and its effect on the ability to perform substantial gainful activity. *Id.* at 17. In making this


Case 2:21-cv-00099-CRW Document 24 Filed 09/28/22 Page 5 of 20 PageID #: 609

argument, Claimant references her hearing in front of the ALJ, in which the VE testified that there would likely be no jobs available to an individual who was absent from work three or more days per month. *Id*. at 17-18. Claimant states that the evidence shows she would likely be absent from work three days per month. *Id*. at 18. Claimant testified that she did in fact miss work frequently at a previous job due to her impairments. *Id*. Additionally, Claimant's treating physician and a nurse practitioner found Claimant's impairments would likely result in multiple absences from work each month. *Id*. In sum, Claimant argues that the ALJ committed reversible error in failing to consider the entirety of the VE's testimony and finding the evidence of Claimant's absenteeism unpersuasive. *Id*. at 18.

The Commissioner offers two arguments in response. First, the Commissioner asserts that substantial evidence supports the RFC finding contained in the hearing decision. [Doc. 22, p. 9]. In advancing this argument, the Commissioner directs the Court to the ALJ's discussion of Claimant's physical and mental symptoms. *Id*. at 12-15. The Commissioner argues that the ALJ adequately considered Claimant's medical records and in doing so was correct in finding that they did not align with the Claimant's subjective complaints. *Id*. The Commissioner defends the ALJ's evaluation of the medical opinion evidence and walks through the specific findings made by the ALJ regarding the various medical opinions of record. *Id*. Specifically, the Commissioner notes that the ALJ found the consultative examiner's opinion unpersuasive, because the examiner's findings regarding Claimant's limitations were inconsistent with her own examination results and those generated by treating sources. *Id.* at 13. Additionally, the Commissioner points to the ALJ's finding that the opinion rendered by Claimant's treating physician was not persuasive because it was not consistent with the finding of moderate COPD reflected by the pulmonary function testing performed. *Id.* at 15.

In response to Claimant's argument regarding absenteeism, the Commissioner asserts that the ALJ was not required to rely on the VE's testimony. *Id.* at 16. Further, the Commissioner contends that Claimant's testimony and medical records did not support her claim that she would consistently have to miss work three days per month. *Id.* at 18-20. In sum, the Commissioner argues that the ALJ properly considered the record before him and likewise properly found that Claimant is not disabled and can perform a range of light work, contending that those conclusions are supported by substantial evidence. *Id*. at 12-21.

Second, the Commissioner argues that in order to prove disability Claimant must demonstrate she is unable to perform her past relevant work both as she performed the work and as the work is generally performed in the national economy. *Id.* at 21-22. (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). The Commissioner asserts the ALJ properly determined that Claimant could perform her past relevant work and such determination supports the ALJ's RFC determination. *Id.* The Commissioner points to the testimony of the VE that a person with the limitations and impairments the ALJ found Claimant to have could perform Claimant's past relevant work as support for this determination. *Id.* at 23.

In addressing this matter on appeal, the Court has reviewed and considered Claimant's medical records and will address them as necessary to fully analyze the issues raised by the parties. (Tr. Ex. 1F-14F). In evaluating those records, the Court notes that those contained in Exhibits 3F-14F were generated on or after the alleged onset date, and Exhibit 2F includes records from before and after the alleged onset date. Additionally, the Court has reviewed and considered the opinions provided by state agency medical and psychological consultants on initial consideration and reconsideration of Claimant's applications for benefits. (Tr. Ex. 1A-4A). Lastly, the Court has

evaluated the hearing testimony. (Tr. 45-70). Having done so, the Court will now address the errors alleged by Claimant in the context of the parties' arguments and applicable law.

## III. LEGAL ANALYSIS

Claimant contends that the ALJ erred in multiple ways in formulating his RFC. *See* 20 C.F.R. § 404.1520 (noting that step four of an ALJ's five question review involves formulating a claimant's residual functional capacity.). The ALJ notably found that "the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)" and summarized his findings as being supported by the "treatment history, medical images and labs, negative signs in exams, the claimant's statements and activities, and the evidence-supported opinions of physicians and care providers." (Tr. 38). As set forth above, the Claimant argues that these conclusions were based on an inconsistent and incomplete evaluation of her mental and physical health records.

In evaluating the ALJ's decision, the Court notes that the ALJ was entitled to a "zone of choice" in determining whether Claimant was disabled if the facts could support a ruling either way. *Blakely*, 581 F.3d at 406. As such, the Court will not disturb the ALJ's decision even if the Court would have decided the matter differently so long as the ruling was rendered in compliance with applicable law and is based on substantial evidence. "Substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020) (internal citations omitted); *Fox v. Comm'r of Soc. Sec.*, 827 F. App'x 531, 534 (6th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019)).

As part of the multi-step review of a Social Security case, the ALJ must make a residual functional capacity determination. *See* 20 C.F.R. § 404.1520. "Residual Functional Capacity" means "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs. ..." 20 C.F.R. § Pt. 404, Subpt. P, App.

2(c). Applicable regulations provide the following guidance for the agency when assessing a claimant's RFC:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b). In rendering a decision about a claimant's RFC, an ALJ is prohibited from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the Claimant's] medical sources." 20 C.F.R. § 404.1520c.

Instead of simply deferring to medical sources, an ALJ is required to consider multiple factors in evaluating the evidence including (1) supportability; (2) consistency; (3) a source's relationship with the Claimant; (4) specialization; and (5) other supporting or contradicting factors. 20 C.F.R. § 416.920c. This "new rule" for the evaluation of opinion evidence departs from the rule applied to claims filed before March 27, 2017. *Compare* 20 C.F.R. § 404.1527 (the "old rule") and 20 C.F.R. § 404.1520c (the "new rule"). The new rule notably "reduc[es] the articulation standards required for ALJs in assessing medical source opinions." 3 Soc. Sec. Disab. Claims Prac. & Proc. § 25:13 (2nd ed.). As other courts have noted in applying the new rule, "[s]upportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (citing *Pogany v. Berryhill*, No. 4:18-CV-04103-VLD, 2019 WL 2870135, at *27 n. 7 (D.S.D. July 3, 2019)) (internal quotations omitted). In assessing whether a medical opinion is supportable, the focus is on the relevance of the objective medical evidence and supporting explanations upon which the

opinion is based. In other words, "[t]he more relevant the objective medical evidence and supporting explanations…, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In considering consistency, the focus is on how the opinions provided square with the overall record. Specifically, "[t]he more consistent a medical opinion(s)… is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. § 404.1520c(c)(2).

***a. RFC formulation as to Claimant's physical limitations***

*i. Discussion of medical records*

Claimant initially argues that the ALJ did not fully consider the significant and progressive worsening of her physical health conditions. Claimant asserts that records from her treating physicians and her own testimony are consistent with a finding that she suffers from stage 2 moderate COPD, which renders her unable to exert herself and further regularly renders her unable to leave her house. [Doc. 17, p. 15-16]. The ALJ's decision makes it clear that he found the treating physician opinions and Claimant's testimony unpersuasive regarding the extent of the impact Claimant's COPD had on her functioning.

The record clearly demonstrates, and the ALJ acknowledged, that Claimant suffers from COPD. (Tr. 35). Prior to and after the alleged disability onset date, imaging of Claimant's lungs showed inflammation and buildup. [Tr. Ex. 1F, p. 2; Tr. Ex. 3F, p. 8; Tr. Ex. 11F, p. 6]. However, a pulse oximetry report of Claimant's oxygen levels indicated that she did not qualify for Nocturnal Oxygen under Medicare Guidelines. [Tr. Ex. 14F, p. 5].

The record also contains notes from treating physicians Charles Montgomery, M.D. and Mandeep Bakshi, M.D. and Alice Pinyan, CFNP. Claimant was treated by Dr. Montgomery multiple times from 2014 to 2020. [Tr. Ex. 4F, 12F]. In visits after the alleged onset date, she complained of a cough and/or shortness of breath in four out of ten visits. [Tr. Ex. 4F, p. 1, 3, 5;

Tr. Ex. 12F, p. 6]. Physical exams showed abnormal respiratory results, including wheezes and/or rhonchi, in three visits, [Tr. Ex. 4F, p. 4, 6; Tr. Ex. 12F, p. 6], while the other seven physical exams showed normal respiratory function. [Tr. Ex. 4F, p. 2, 8, 10, 12; Tr. Ex. 12F, p. 2, 4, 15]. Claimant is prescribed a nebulizer, used three times a day, and an inhaler to help combat her symptoms. (Tr. 54). Dr. Montgomery prescribed albuterol to help address these issues. [Tr. Ex. 6F]. In a physical capacity questionnaire, Dr. Montgomery opined that Claimant was capable of low stress jobs, could sit, stand, and walk for less than two hours, and could occasionally lift less than ten pounds but he provided no explanation for how he arrived at these limitations, other than mentioning that Claimant experiences shortness of breath with exertion. [Tr. Ex. 13F].

Claimant also treated with Dr. Bakshi's office on numerous occasions dating back to 2016. [Tr. Ex. IF, 8F, p. 2; Tr. Ex. 9F, p. 3]. On two of those occasions, February 26, 2020, and May 26, 2020, Claimant complained of difficulty breathing, chest congestion, worsening shortness of breath, an occasional cough, and frequent wheezing, in addition to reporting a productive cough in the May visit. *Id.* However, physical exams on both occasions showed clear breath sounds. *Id.* Dr. Bakshi prescribed Dulera, Spoiriva, ProAir, and prednisone. [Tr. Ex. 8F, p. 1].

Dr. Marianne Filka performed a consultative examination and found Claimant to have no abnormal respiratory signs. Though Claimant reported trouble with coughing, wheezing, and breathing, the physical examination showed no wheezes, rhonchi, or rales, and Dr. Filka noted that Claimant's lungs were clear to auscultation and percussion. [Tr. Ex. 5F, p. 7-8]. Dr. Filka opined that Claimant should avoid pulmonary irritants and work at a sit down or sedentary job where she can stand and/or walk ten to fifteen minutes per hour. *Id.* at 10. Though the record contains evidence that at times Claimant struggled with difficult and painful symptoms due to her COPD, it also contains evidence that on many occasions her respiratory function was normal. Especially given that Claimant's COPD had not become severe enough to render her oxygen-dependent, the

Court finds that the ALJ's conclusions regarding the impact of Claimant's COPD on her functioning were sufficiently supported by record evidence and fell within his zone of choice.

In addition to suffering from symptoms of COPD, Claimant asserts that she cannot sit for long periods of time, because her legs begin to swell. (Tr. 59). Claimant began reporting this swelling to Dr. Bakshi as early as 2016 and continued to report it on recent visits occurring on February 26, 2020, and May 26, 2020. [Tr. Ex. 2F, p. 3, Ex. 9F, p. 2-3, Ex. 14F, p. 9-10]. Further, she reported tenderness in her left ankle during her consultative examination with Dr. Filka. [Tr. Ex. 5F, p. 9]. Although swelling was documented by Claimant's treating providers, those provided also noted that Claimant's gait, pulses, and reflexes were all normal and there was no cyanosis. [Tr. Ex. 2F, p. 4, 6, Ex. 9F, p. 3, Ex. 14F, p. 7, 10]. The record contains no imaging to determine the source of the swelling nor is there evidence of record as to how any swelling purportedly impacted Claimant's activities. Additionally, Claimant has not been prescribed any medication to address the issue. (Tr. 59).

Claimant next argues that the ALJ erred in finding that Claimant's medication management and cigarette use supported a finding that she was not disabled. The Sixth Circuit has generally held that conditions which can adequately be managed through use of medication are "inconsistent with a finding of total disability." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *see also Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 806 (6th Cir. 2011) (observing that while "Francis argues that consuming pain medication is itself evidence that he experiences moderate to severe pain, ... it is just as consistent with a finding that Francis's medications adequately manage his pain and enable him to work full time with some restrictions."). Here, Claimant's treatment regimen includes inhalers, a nebulizer, and anti-inflammatories. Claimant testified that these prescribed medications are helpful in dealing with her COPD symptoms, and when this testimony is coupled with the fact that during many of her medical visits Claimant's breath sounds were normal, the Court must conclude that the ALJ did

not err in concluding that Claimant's medication management did not support a finding of disability. (Tr. 56); [Tr. Ex. 10F, p. 2 (records from Greeneville Community Hospital from 3/16/20 noting a pulse oximetry reading of 98% with no shortness of breath and normal breath sounds); Ex. 11F, p. 6 (chest x-ray results from 1/2/20 which note no acute findings and no change since the prior study in 7/19); Ex. 11F, p. 16-20 (Laughlin Memorial Hospital ER record dated 6/7/17 noting pain in left side but no wheezing, normal pulse oximetry, and no acute x-ray findings with only NSAIDS being prescribed); Ex. 14F, p. 7 (records dated 5/26/20 of Alice Pinyan, CFNP reflecting a normal pulse oximetry reading and clear bilateral breath sounds).

As to the issue of smoking, unquestionably the ALJ may consider evidence that Claimant did not follow medical advice. *See Brown v. Soc. Sec. Admin.*, 221 F.3d 1333, No. 99-5719, 2000 WL 876567, at *1 (6th Cir. 2000) (observing that "[al]though Brown suffers from chronic obstructive pulmonary disease, his heavy smoking habit indicates that the condition is not disabling."); *see also Smith v. Comm'r of Soc. Sec.*, No. 14-11804, 2015 WL 4617073, at *11 (E.D. Mich. July 31, 2015) (noting that "[t]he Sixth Circuit has generally held that the ALJ may consider whether a claimant has followed a physician's advice to quit smoking when evaluating the claimant's credibility, particularly when quitting will improve recovery of the allegedly disabling condition."). Here, Dr. Bakshi repeatedly advised Claimant to quit smoking cigarettes to prevent the worsening of her COPD symptoms. [Tr. Ex. 8F, 9F]. At the same time, the ALJ failed to mention that Claimant cut down her use over time, and ultimately completely stopped smoking on March 17, 2020. [Doc. 17, p. 12-13]. Given that the Claimant had been smoking for roughly forty years, steadily cut back on her smoking and ultimately summoned the willpower to quit, the Court finds that, at a minimum, the ALJ placed too much weight on Claimant's failure to immediately comply with doctor's orders to quit smoking. (Tr. 56). However, even if the ALJ erred in giving any consideration to Claimant's smoking, the Court finds that the record still contained sufficient evidence to support the ALJ's determination that Claimant was not fully disabled.

*ii. RFC Formulation*

When determining whether a claimant is disabled, the ALJ will first assess his or her RFC. 20 C.F.R. § 404.1560(a). Then, the ALJ will compare the RFC with the physical and mental demands of the claimant's past relevant work. *Id.* If the claimant can still perform his or her past relevant work, the ALJ will find that he or she is not disabled. If the RFC is not supported by substantial evidence but the claimant can still perform past relevant work under a different RFC, a flawed RFC determination will constitute "harmless error" and the ALJ's determination will be upheld. *Id.* § 404.1560(b)(3); *Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851, 863-64 (6th Cir. 2018) ("[W]hether Plaintiff is capable of performing light work is not central to the question of whether she is disabled. The ALJ determined that, based on her limitations, Plaintiff could perform her past relevant work and other sedentary jobs… the ALJ's finding that Plaintiff could perform light work, even if not supported by substantial evidence, would constitute 'harmless error' and would not warrant reversal." (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (internal citation omitted) ("[E]ven where the ALJ's decision is based on mistakes, this Court affirms those conclusions if the mistakes constituted harmless error.")); *see also Coates v. Saul*, No. 1:19-CV-00166-LLK, 2020 WL 3862254, at *2 (W.D. Ky. July 8, 2020) ("[E]ven if the ALJ erred in finding that Plaintiff has an RFC for light work, the error was harmless. This is because the ALJ's finding that Plaintiff has an RFC for light work was not essential to the ALJ's ultimate conclusion of lack of disability.… Plaintiff has neither alleged nor proven that she cannot perform her past relevant work as a sedentary secretary.").

The ALJ here found Claimant capable of performing light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR 404.1567(b). The VE testified that Claimant had relevant past work that fell into both the light and sedentary categories. (Tr. 66-67). Claimant's sedentary work included being a telemarketer, customer complaint clerk, and bank customer service representative in a call center.

*Id.* The VE further testified that Claimant's past relevant work would equip her with transferable skills to perform other sedentary work. (Tr. 68-69).

While Claimant clearly suffers from significant health issues, including inflammation and buildup in her lungs, which cause episodes of wheezing, coughing, and painful breathing, the record contains more normal than abnormal physical exams. Though Dr. Montgomery opined that Claimant had severe limitations, the ALJ found Dr. Montgomery's opinion unpersuasive. (Tr. 37). In doing so, the ALJ noted that Dr. Montgomery's opinion was unsupported by his own office visit notes which showed that on multiple physical examinations that Claimant had normal respiratory function. The ALJ additionally found that Dr. Montgomery's opinion was inconsistent with other evidence in the record, some of which the Court has outlined above, including Dr. Bakshi's normal physical exam findings, Dr. Filka's normal exam findings, and Claimant's pulse oximetry reports. Further, Dr. Montgomery's opinion comes in the form of a check-box questionnaire with limited explanation. The Sixth Circuit has found that when treating physician opinions come in the form of questionnaires without meaningful explanation, they are not particularly persuasive. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (rejecting the opinion of Claimant's treating physician, Dr. Dittemore and noting that "Dr. Dittemore's check-box analysis is not accompanied by any explanation…We have previously declined to give significant weight to rudimentary indications that lack an accompanying explanation."); *accord Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441 (6th Cir. 2017) (observing that "[s]uch opinions have been characterized as 'weak evidence at best' that meets the 'patently deficient standard.').

The question is whether these facts provide substantial record evidence to support the ALJ's finding that Claimant retained the residual functional capacity to perform both sedentary and light work. The Court answers the question in the affirmative as to the ALJ's determination that Claimant could continue to perform sedentary work but in the negative as to his conclusion that Claimant remained able to perform light work. While Claimant's testimony reveals that she

stands and walks to perform housework at times and does not use a cane or walker, she further testified that she had to take frequent breaks when doing so. (Tr. 61, 68-69). Additionally, the record demonstrates that Claimant tends to suffer from shortness of breath and chest pain with exertion, and Dr. Filka opined that Claimant should perform only sedentary work. The ALJ failed to provide an adequate reason for discounting this record evidence, especially in light of the significant exertional differences between the light and sedentary categories of work.

Although the Court finds that the ALJ did err in determining that Claimant retained the capacity to perform light work, ultimately the Court has also determined that the error was harmless. The record demonstrates that Claimant did retain the ability to perform sedentary work and had performed multiple sedentary jobs in the past. Additionally, the VE opined that Claimant had gained transferable skills from that past relevant work which would permit her to perform at least three other sedentary jobs available in significant numbers in the national market. (Tr. 68-69). Sedentary work is defined as involving "lifting no more than 10 pounds at a time and occasionally lifting" light items. 20 C.F.R. § 404.1567(a). Sedentary work primarily involves sitting but "walking and standing are required occasionally" as well. *Id*. Although Claimant testified that she cannot lift more than five pounds, her purported inability to lift is due to her breathing issues, not a mechanical issue involving her musculoskeletal system. (Tr. 60). While Claimant also testified that she is unable to sit for significant periods of time due to the swelling in her legs which, as referenced above, is documented in her medical records, the swelling has never been significant enough to require testing or treatment with medication. (Tr. 59). Given the record that the ALJ had before him, it was reasonable to conclude Claimant could in fact occasionally lift light objects, with a maximum weight being ten pounds. Additionally, Claimant's own testimony demonstrates that she sits for long periods of time and occasionally walks and stands in a way that would enable her to perform that required aspect of sedentary work.

***b. RFC formulation as to limitations in Claimant's mental functioning***

The Court will next address Claimant's mental health and functioning. It is well-documented in the record that Claimant has suffered from anxiety for an extended period and more recently from depression as well. (Tr. 58). She asserts that these conditions make it difficult for her to handle stress and focus on tasks. (Tr. 35). Despite Claimant's contentions, the ALJ found that she was "capable of performing simple and detailed tasks for eight hours a day with standard breaks," and the fact that her conditions were controlled using medication management alone did not support a finding that Claimant had disabling limitations. *Id.* at 35-36.

Anna Palmer, MS, LSPE, performed a psychological evaluation, reviewed by Diane Whitehead, Ph.D., of Claimant and found her to appear frustrated but with an appropriate affect and normal cognitive functioning. [Tr. Ex. 7F. p. 2]. Ms. Palmer noted that Claimant has an associate degree in medical insurance coding and has sustained jobs for multiple years, her longest employment being in customer service for nine years. *Id.* at 1-2. Claimant related well to Ms. Palmer and appeared capable of understanding general concepts and adequately concentrating on work-related demands. *Id.* at 3-4. In her ALJ hearing, Claimant's testimony also provided some confirmation of her mental functioning, with her testifying that she frequently uses the internet and spends significant time on the phone with family members. (Tr. 61-62).

To treat her symptoms of anxiety and depression, Claimant has been taking BuSpar for ten years and Trazodone for three to four years. [Tr. Ex. 7F, p. 2]. The Court notes that Claimant has not undergone therapy to address her mental health issues, and her primary care provider, Dr. Montgomery, prescribed her medication rather than a psychiatrist. [Tr. Ex. 6F]. Generally, when mental health conditions can be effectively managed by medication alone, that fact is indicative of them not being disabling. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 335 (6th Cir. 2007) ('"[Claimant's] problems include neck pain, back pain, restless legs, depress[ion] and anxiety.' … Dr. Kleykamp's modest treatment regimen for Myatt is inconsistent with a diagnosis of total

disability.”). Here, Claimant’s treatment includes anxiolytics and antidepressants, and she testified that medication helps alleviate her symptoms. (Tr. 58-59). The Court further notes that Claimant’s records specifically document that she has normal cognitive and neurological functioning, including cognition and memory, and the Court found no notation of her functioning in these areas being limited. *See* [Tr. Ex. 7F, p. 2, Ex. 8F, p.2, Ex. 10F, p.3, Ex. 12F, p. 15-16]. Accordingly, the Court finds that substantial evidence supports the ALJ’s finding that Claimant does not suffer from disabling limitations in her mental functioning.

***c. Consideration of Claimant’s potential absenteeism***

Claimant finally contends that the ALJ failed to consider the VE’s testimony and other evidence regarding Claimant’s potential excessive absenteeism. At the end of the hearing, Claimant’s attorney asked the VE whether a hypothetical individual who was likely to be absent from work three days per month would be able to sustain employment. (Tr. 70). The VE responded that such absenteeism would exceed most employers’ tolerance. *Id.* Claimant asks the Court to consider this testimony, in addition to Claimant’s testimony, Dr. Montgomery’s opinion, and a questionnaire from Alice Pinyan, CFNP, as evidence that Claimant is disabled. [Doc. 17, p. 18].

It is well-settled that a VE’s response to a hypothetical question may serve as substantial evidence supporting what type of work a claimant can perform, but “the question must accurately portray a claimant’s physical and mental impairments.” *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)). Here, the ALJ found that the question of whether a hypothetical employee could miss three days of work per month did not accurately portray Claimant’s limitations.

While Claimant testified that she missed “a lot” of work at her previous job at Capitol Bank, which was later bought by First Tennessee Bank, she did not specify how many days she missed or how frequently she missed work. (Tr. 50, 63-64). Claimant did state that she that at one

point she went on Family Medical Leave to avoid being fired but also testified that her job was eliminated at some point after apparently Capitol Bank was bought out by another bank. (Tr. 50, 64). It appears from the psychological evaluation performed by Anna Palmer, MS, LSPE and Diane Whitehead, Ph.D. that Claimant was not on leave at the time her position was eliminated but was instead laid off. [Tr. Ex. 7F, p. 1]. Claimant testified at the hearing that she did apply for and received unemployment after her position was eliminated. (Tr. 50).

Claimant next points to questionnaires from Drs. Montgomery and Pinyan in support of her contention. Dr. Montgomery opined that Claimant would likely miss three days of work per month but fails to provide an explanation for this opinion. [Tr. Ex. 13F, p. 2]. This is particularly problematic because his own records reflect normal findings on many occasions. Dr. Pinyan stated in a separate questionnaire, that Claimant's impairments produce "good days" and "bad days," and patients with COPD may suffer from "episodes." [Tr. Ex. 14F, p. 10]. At the same time, Dr. Pinyan does not specify what a "bad day" or an episode would look like in terms of Claimant's ability to work, and the Court cannot find that his opinions were specific enough to support a finding that Claimant would be expected to miss three days of work per month. Additionally, Dr. Pinyan stated herself that she was unable to attest to Claimant's functional abilities. *Id.* at 2. Again, the Court must note that check-box questionnaires are weak evidence when unaccompanied by deeper analysis. *Hernandez*, 644 F. App'x at 474; *Shepard*, 705 F. App'x at 441. Given the lack of explanation provided by Drs. Montgomery and Pinyan regarding why they were of the opinion that Claimant's conditions would cause her to miss work on a consistent basis, and the lack of more specific testimony from Claimant regarding the nature of her absences from her previous employment, the Court cannot find the ALJ erred in concluding that Claimant had not adequately demonstrated that she would consistently miss more work than a typical employer would tolerate.

## IV. CONCLUSION

While Claimant undoubtedly suffers from painful symptoms related to COPD and experiences challenging mental health conditions, both of which make it more difficult for her to maintain employment than many others, the Court finds that substantial record evidence supports the ALJ's conclusion that Claimant was not disabled during the relevant timeframe. Given the Court's narrow scope of review, the Court is compelled to **GRANT** the Commissioner's Motion [Doc. 21] and **DENY** Claimant's Motion [Doc. 17]; therefore, the final decision of the agency is affirmed.

SO ORDERED:

/s Cynthia Richardson Wyrick
United States Magistrate Judge



Case 2:21-cv-00099-CRW Document 24 Filed 09/28/22 Page 20 of 20 PageID #: 624